IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULETTE E. PAHLKE, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Civil Action No. 08CV2589 |
| CLEARBROOK, an Illinois not for profit corporation, | ) ) Judge Holderman ) Magistrate Judge Cox |
| Defendant. | ) ) |

## ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant, Clearbrook, by and through its attorney, Devlin J. Schoop of Laner Muchin Dombrow Becker Levin & Tominberg, Ltd., herein states the following as its Answer and Affirmative Defenses to the Complaint:

## PARTIES

### PARAGRAPH NO. 1:

PAULA is a white female and is a resident of the State of Illinois, County of Cook. She currently resides at 809 Lill Street, Barrington, Illinois. PAULA is a registered nurse and was an employee of CLEARBROOK at the time of the alleged reverse discrimination.

### ANSWER:

Defendant admits that Plaintiff is a white female. Defendant further admits that Plaintiff was a registered nurse during her employment with Defendant. Defendant denies that Plaintiff was subjected to "alleged reverse discrimination." Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph No. 1.

### PARAGRAPH NO. 2:

CLEARBROOK is an Illinois not for profit corporation which provides services for challenged individuals. In the state of Illinois, CLEARBROOK has various locations throughout

Cook County, Illinois and on information and belief employees [sic] more than five hundred individuals.

**ANSWER:**

Defendant admits the allegations contained in Paragraph No. 2.

## JURISDICTION

**PARAGRAPH NO. 3:**

This matter is brought under 42 USC [sic] section 2000(e) – 5(b).

**ANSWER:**

Defendant admits that Plaintiff purports to bring this action pursuant to 42 U.S.C. §2000(e)-5(b), but denies that it has engaged in any unlawful conduct for which liability can be imposed.

## VENUE

**PARAGRAPH NO. 4:**

Venue is proper in the Northern District of Illinois, Eastern Division.

**ANSWER:**

Defendant admits the allegations contained in Paragraph No. 4, but denies that it has engaged in any unlawful conduct for which liability can be imposed.

## FACTS

**PARAGRAPH NO. 5:**

PAULA was an employee of CLEARBROOK. She began as a part time registered nurse in March of 1998 for a compensation of eighteen dollars per hour ($18.00). At the time of her discharge, she was a full time registered nurse, earning twenty four dollars and ninety one cents per hour ($24.91).

**ANSWER:**

Defendant admits that Plaintiff was an employee of Defendant. Defendant admits that Plaintiff began as a part-time registered nurse in or around March 1998 and was paid at a rate of

2

$12.00 per hour. Defendant admits that Plaintiff was a full-time registered nurse at the time she was discharged, earning a base rate of pay of $22.91 per hour.

**PARAGRAPH NO. 6:**

On June 6, 2007, PAULA was terminated for an incident that occurred on May 2, 2007 wherein a client was injured and ultimately died. She was the registered nurse on duty at that time. A copy of the termination is attached hereto and made a part hereof. PAULA was terminated even though the in house review of the matter which was conducted on June 6, 2007 unequivocally states that the outcome was not preventable as a result of any actions that were committed or omitted during the case of the client.

**ANSWER:**

Defendant admits that Plaintiff was terminated on June 6, 2007 due to an earlier incident, which occurred on May 2, 2007 when a client of Defendant was injured and died. Defendant admits that Plaintiff was the registered nurse on duty when the client was injured. Defendant admits that Plaintiff was terminated because Plaintiff failed to meet the Defendant's legitimate expectations. Defendant admits that during the June 6, 2007 Medical Professional Meeting a case review conducted of the May 2, 2007 incident concluded that "the final outcome was not preventable as a result of any actions that were committed or omitted during the care of the client," but denies that said conclusion establishes that Defendant lacked a legitimate basis to discharge Plaintiff.

**PARAGRAPH NO. 7:**

PAULA filed a timely charge with the EEOC, a copy of which is attached hereto and made a part hereof.

**ANSWER:**

Defendant admits the allegations contained in Paragraph No. 7.

**PARAGRAPH NO. 8:**

The EEOC rendered its decision on February 8, 2008, a copy of which is attached hereto and made a part hereof.

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 8.  Defendant, further answering, states that the EEOC rendered a *determination* that "based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of [Title VII]." Defendant, further answering, admits that the determination was rendered on February 8, 2008 in a Dismissal and Notice of Rights that was addressed to Plaintiff.

**PARAGRAPH NO. 9:**

On the day in question, May 2, 2007, a female African American client fell or was pushed.  No incident report was filed.  PAULA was the nurse on duty.

**ANSWER:**

Defendant admits that on or about May 2, 2007, a client of Defendant was pushed by another client of Defendant.  Defendant admits that the client that was pushed was an African-American female.  Defendant admits that Plaintiff was the nurse on duty when the May 2, 2007 incident occurred and that Plaintiff failed to file an incident report concerning the May 2, 2007 incident.

**PARAGRAPH NO. 10:**

On May 7, 2007, the client was sent to Northwest Community Hospital ("HOSPITAL") and examined by a physician.  The HOSPITAL returned the client to CLEARBROOK.

**ANSWER:**

Defendant admits the allegations contained in Paragraph No. 10.

**PARAGRAPH NO. 11:**

On May 9, 2007, the client returned to the HOSPITAL and was diagnosed with a subdural hematoma.  A craniotomy was performed that evening and the client returned to CLEARBROOK on May 12, 2007.

**ANSWER:**

Defendant admits that the client was returned to the hospital on or about May 9, 2007. Defendant admits that the client was diagnosed with a subdural hematoma. Defendant admits that a craniotomy was performed on the client on or about May 9, 2007 and that the client was returned to Defendant on or about May 12, 2007.

**PARAGRAPH NO. 12:**

On May 14, 2007, PAULA and an aide were asked to initiate false incident reports regarding the May 2, 2007 incident because surveillance tapes indicated that the client was pushed by another client and fell. An African American Aide who had walked by the fallen client, never reporting the incident to anyone.

**ANSWER:**

Defendant denies the allegation that Plaintiff "and an aide were asked to initiate false incident reports regarding the May 2, 2007 incident." Defendant admits that after it reviewed surveillance footage that indicated that the client was pushed by another client and fell, that Plaintiff and other personnel of Defendant were requested to document the incident, but were never implicitly or explicitly told to falsify information. Defendant admits than an African-American aide, who had walked by the fallen client, failed to report the incident to anyone. Defendant, further answering, states that the African-American aide quit his employment before Defendant could terminate him.

**PARAGRAPH NO. 13:**

On May 16, 2007, the client returned to HOSPITAL for tests and returned the same day with no further medical instructions.

**ANSWER:**

Defendant admits that the client was returned to the hospital on May 16, 2007 for tests, but denies all remaining allegations contained in Paragraph No. 13.

**PARAGRAPH NO. 14:**

On May 19, 2007, the Medical Director ordered neurological checks every two hours and the client was sent back to the HOSPITAL. The client returned to CLEARBROOK with no new orders.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in Paragraph No. 14.

**PARAGRAPH NO. 15:**

On May 21, 2007 the client returned to the HOSPITAL for more testing. She was returned to CLEARBROOK with no new orders.

**ANSWER:**

Defendant admits that on May 21, 2007 the client was returned to the hospital for more testing. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph No. 15.

**PARAGRAPH NO. 16:**

On May 23, 2007, the client expired.

**ANSWER:**

Defendant admits the allegations contained in Paragraph No. 16.

## COUNT I - DISCRIMINATION

**PARAGRAPH NO. 17:**

On May 24, 2007, PAULA offered to resign as she was the registered nurse on duty and was told by the Director or Nursing that none of the circumstances with the client were the fault of PAULA and confirmed that she had done nothing wrong.

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 17.

**PARAGRAPH NO. 18:**

PAULA was made aware of a meeting on May 30, 2007 with Jeri Phillips, the African American Licensed Practical Nurse ("LPN") who was the union steward for the LPN's and the aides, as Registered Nurses are not allowed to be part of the union. Further, the Illinois Department of Public Health investigated an anonymous complaint on the same day.

**ANSWER:**

Defendant admits that Jeri Phillips is African-American and was the union steward for the LPN's and aides. Defendant admits that registered nurses are not bargaining unit members of the union that represents LPN's and aides. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph No. 18.

**PARAGRAPH NO. 18 [SIC]:**

On June 1, 2007, PAULA was told by Jean O'Connor, an agent of CLEARBROOK that the African American Staff members wanted PAULA terminated and that they were going to boycott CLEARBROOK's employment if PAULA was not terminated.

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 18 [sic].

**PARAGRAPH NO. 19:**

PAULA was terminated because she is white and the African American Aides threatening to boycott CLEARBROOK if no action was taken against her.

7

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 19.

**PARAGRAPH NO. 20:**

The in house Medical Professions Meeting ("MPM") that was held on June 6, 2007 and emailed to PAULA, clearly states that

". . .the final outcome was not preventable as a result of any actions that were committed or omitted during the care of the client." (1)

It goes on to say at number 2 that

"It was noted by a few of the RN's that the care of the clients at NWCH and the condition that they are in when the (SIC) return from a hospitalization has been less than acceptable."

The notes are attached hereto and made a part hereof.

**ANSWER:**

Defendant admits that Paragraph No. 20 selectively quotes portions of the June 6, 2007 Medical Professional Meeting notes and admits that Plaintiff accurately quotes those selected portions, but deny that Plaintiff's selective recitation accurately reflects the entire contents of the notes for that meeting. Defendant, further answering, denies that the June 6, 2007 Medical Professional Meeting notes support any inference or argument that Defendant lacked a legitimate non-discriminatory basis to terminate Plaintiff's employment.

**PARAGRAPH NO. 21:**

Consequently, the client's death, as referenced in the MPM notes, was not the result of any action or lack of action on the part of PAULA. PAULA has always conducted herself in a professional manner and has always met the expectations of CLEARBROOK. All of PAULA's employee reviews were awarded an "excellent" mark.

**ANSWER:**

Defendant admits that according to the June 6, 2007 Medical Professional Meeting notes "the final outcome was not preventable as a result of any actions that were committed or omitted during the care of the client." Defendant denies that Plaintiff has always conducted herself in a

professional manner.  Defendant denies that Plaintiff has always met the expectations of Defendant.  Defendant denies that "all of [Plaintiff's] employee reviews were awarded an 'excellent' mark," but admits that several of Plaintiff's evaluations that occurred prior to the May 2, 2007 incident, indicated that Plaintiff met expectations.

**PARAGRAPH NO. 22:**

PAULA was terminated solely because she is Caucasian; the client that died was African American, and the African American Aides threatened CLEARBROOK with a boycott in the event that no action was taken against PAULA.

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 22.

**PARAGRAPH NO. 23:**

CLEARBROOK acted with malice and reckless disregard in terminating PAULA, knowing that their own in house examination revealed that 'THE FINAL OUTCOME WAS NOT PREVENTABLE AS A RESULT OF ANY ACTIONS THAT WERE COMMITTED OR OMITTED DURING THE CARE OF THE CLIENT." See Medical Professionals Meeting notes of June 6, 2007, attached hereto.  To make matters worse, CLEARBROOK requested that, PAULA and some of the other aides, create records as if they were made on the day in question, which PAULA did as requested.  CLEARBROOK then fought her attempts to get unemployment compensation, knowing that their own internal investigation revealed that PAULA was not to blame for the death of the client.

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 23.

**PARAGRAPH NO. 24:**

In addition to losing her job, PAULA was forced to seek medical and mental health assistance in dealing with these events.  PAULA continues to use medication to assist her in coping with the events that occurred.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph No. 24.

**PARAGRAPH NO. 25:**

PAULA has mitigated her damages by accepting part time employment which she is hopeful will lead to full time employment as it did with CLEARBROOK.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in Paragraph No. 25.

**PARAGRAPH NO. 26:**

Further, PAULA has been forced to incur attorney's fees and costs as a result of CLEARBROOK's wrongful termination.

**ANSWER:**

Defendant denies the allegations contained in Paragraph No. 26.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**PARAGRAPH NO. 1-26**

PAULA adopts and realleges paragraphs one through twenty-six of Count I as paragraphs one through twenty six of this Count II as though fully set forth herein.

**ANSWER:**

Defendant incorporates its response to Paragraph Nos. 1 through 26 of Count I as and for its response to Paragraph Nos. 1 through 26 of Count II.

**PARAGRAPH NO. 27:**

CLEARBROOK's termination of PAULA was extreme and outrageous in light of the fact that they had already conducted an internal examination and found that nothing that was "committed or omitted" would have prevented the death of the client.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 28:**

PAULA offered to resign and was told that she did nothing wrong and had an exemplary service record to CLEARBROOK.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 29:**

CLEARBROOK knew that PAULA had an ongoing relationship with the clients and, regardless of fault, was upset over the death of this client.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 30:**

CLEARBROOK knew that the nurses had questioned the standard of care at the HOSPITAL because in Agenda Item number 2 of the Medical Professionals Meeting it states,

> "It was noted by a few of the RN's that the care of clients at NWCH and the condition that they are in when the (SIC) return from a hospitalization has been less than acceptable." . . .

PAULA had questioned the care that the client was receiving at the HOSPITAL.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 31:**

CLEARBROOK knew that the wrongful termination would cause emotional distress.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 32:**

CLEARBROOK conduct has caused PAULA's emotional distress.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 33:**

As a result of CLEARBROOK's actions, PAULA needed to obtain medical and mental health care.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

**PARAGRAPH NO. 34:**

Punitive damages should be allowed as CLEARBROOK's conduct was improperly motivated by the threats that they had been given by the African American Aides called for PAULA's resignation.  CLEARBROOK had already conducted an internal investigation and concluded that PAULA had not violated any standard of care.  In disregard of their own internal investigation, they fired PAULA.

**ANSWER:**

No answer is required as Count II is the subject of a pending motion to dismiss by the Defendant under Fed. R. Civ. P. 12(b)(6).

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

In her Complaint, Plaintiff alleges that she has suffered disruption to her personal life, including emotional distress, lost benefits, and lost wages.  Plaintiff has an obligation to mitigate her damages.  To the extent that Plaintiff has failed to reduce and/or mitigate her damages, Plaintiff's damages should be reduced or barred.

**SECOND AFFIRMATIVE DEFENSE**

In her Complaint, Plaintiff alleges that she is entitled to lost benefits and wages due to her discharge. Plaintiff's claim for past, present and future loss of earnings and benefits, is subject to a set-off for any interim earnings or benefits acquired by Plaintiff.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff is precluded from recovering for any discriminatory acts alleged to have occurred more than 300 days prior to the filing of her July 19, 2007 Charge of Discrimination, for any discriminatory acts alleged to have occurred after the filing of that Charge, or for any claims that are otherwise found to be beyond the scope of the EEOC Charge of Discrimination that forms the basis of this lawsuit.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims for any form of emotional distress or any tort action that allegedly accrued during Plaintiff's employment with Defendant Clearbrook is preempted by the Illinois Human Rights Act to the extent that Plaintiff's injury is linked with an alleged civil rights violation occurring within the workplace.

WHEREFORE, for the above stated reasons, Defendant denies that Plaintiff is entitled to any relief whatsoever and requests that the Complaint be dismissed in its entirety and that it be awarded its attorneys' fees and costs.

Dated:  July 7, 2008

                By:  /s/ Devlin J. Schoop
                      Devlin J. Schoop, Counsel for Defendant

Devlin J. Schoop
Laner, Muchin, Dombrow, Becker,
 Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610
(312) 467-9800
(312) 467-9479 (fax)

**CERTIFICATE OF SERVICE**

Devlin J. Schoop, an attorney, hereby certifies that, on this 7th day of July 2008, he caused the **Answer and Affirmative Defenses to Complaint** in the above-captioned matter to be filed electronically with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, with a courtesy hard copy personally delivered to the chambers of the Hon. James F. Holderman, and served a copy of the foregoing electronically by operation of the Court's CM/ECF system to plaintiff's counsel of record:

>Steven A. Miner
>28 Rolling Hills Drive
>Barrington, IL  60010

>/s/ Devlin J. Schoop
>Devlin J. Schoop, Counsel for Defendant