IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| PAULETTE E. PAHLKE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | No. 08 CV 2589 |
| | ) | |
| CLEARBROOK, an Illinois not | ) | Judge Holderman |
|     profit corporation, | ) |  Magistrate Cox |
|     Defendant. | ) | |

PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS COUNT II

NOW COMES the Plaintiff, Paulette E. Pahlke ("PAULETTE"), by and through her attorney, Steven A. Miner, and for her Answer to the Motion to Dismiss Count II of the Defendant, Clearbrook, an Illinois not for profit corporation ("CLEARBROOK"), states as follows:

A.  BACKGROUND

1. PAULETTE admits that the claim presented is a reverse discrimination action whereby PAULETTE was told that the African American Staff members wanted her terminated.  She believes that she was fired by CLEARBROOK to appease the African American nurse's aides.  The incident occurred on May 2, 2007; the client died on May 23, 2007 and, PAULA was terminated on June 2, 2007.

2.  PAULETTE denies that the sole basis of her emotional distress resulted from the discriminatory acts of CLEARBROOK.  The mere death of the client whom PAULETTE had developed a relationship with caused her to be distressed.  PAULETTE states at paragraph 29 of her Complaint that "CLEARBROOK knew that PAULA had an ongoing relationship with the CLIENTS and, regardless of fault, was upset over the death of this client." (emphasis added)  Further, paragraph 30 refers to the nurses' concern over the standard of care that clients received at the hospital when CLIENTS returned to CLEARBROOK was less than acceptable.  (emphasis

added)  This was not only relevant to the client that had just died.   The emotional distress that PAULETTE was experiencing predates the death of this client that is the subject matter of the complaint. PAULETTE's claim is not inextricably linked to her claim of discrimination. At paragraph 30 of the Complaint, PAULETTE states that she "questioned the care that the client was receiving at the hospital." While this does refer to the client that died, the notes of the Medical Professionals Meeting that were attached to the Complaint state that the condition and the care of the clients while at the hospital was "less than acceptable."  A few of the registered nurses were complaining of the care given to the clients that went to the hospital, not only of the client that died.  Hence, there was anxiety when a client went to the hospital because the nurses did not feel that the clients were being taken care of properly.  The death of this client was merely another example of that less than acceptable care that the nurses were referring to.

The question to be considered is, in the event that there was no claim of discrimination, could the Intentional Infliction of Emotional Distress ("IIED") claim stand by itself.  It could.  The elements of IIED are:

  i.    An act amounting to extreme and outrageous conduct;
  ii.   Intent or recklessness on the part of the defendant;
  iii.  Causation; and,
  iv.   Damage.

The question as stated in Naeem v. McKesson Drug Co., 444 F.3d 593 (7TH Circuit 2006), is whether the necessary elements can be established "independent of any legal duties furnished by the IHRA, not whether the two claims happen to arise from the same course of conduct".  A few of the registered nurses who worked for CLEARBROOK were upset when a client(s) returned from the hospital.  On information and belief, CLEARBROOK did not address that issue with the hospital at any time that this was brought to their attention. This was about the standard of care with any client, not just the client that died.  That would cause a reasonable health care professional, who was trying to do a good job and who cared about her clients, to feel distress.  It is not only with the client that died that concerns were raised about the standard of care provided by the hospital.  The allegation in PAULETTE'S Complaint at paragraph 29 refers to PAULETTE's relationship with the "clients" and does not merely address the client that died.

Once again, the acts that were occurring not only deal with the client that died but with a number of other clients.  This predates the client's death. The issue of staffing has not of yet come out due to the fact that this matter is still in its infancy with regard to discovery.  PAULETTE was always undergoing stress due to the frequent problems with the understaffing of aides.  On a number of occasions Qualified Mental Retardation Professionals ("Q's") had to be called in by CLEARBROOK to help assist getting the clients ready to commence their day.  This included, but was not limited to, getting the clients out of bed, dressing, feeding bathing and whatever else was necessary.  This created a stressful environment which was an everyday occurrence.

SUMMARY OF ARGUMENT

CLEARBROOK's argument is that PAULETTE's claim for intentional infliction of emotional distress ("IIED") should be dismissed because it is inextricably intertwined with alleged discriminatory employment practices that are within the exclusive jurisdiction of the Illinois Human Rights Act ("IHRA").   The claim can stand without the alleged acts of discrimination by CLEARBROOK which are the subject matter of Count I of PAULETTE's Complaint.  The test is whether the alleged conduct would be extreme and outrageous absent proof of a civil rights violation.  The facts are that the registered nurses of CLEARBROOK were complaining that when clients were sent to the hospital, the standard of care that they were receiving was "less than acceptable."  See Medical Professional Meeting notes attached to the Complaint. A client that PAULETTE was the nurse on duty for was sent to the hospital.  PAULETTE questioned the standard of care that that client was receiving at the hospital before that client died.  See Complaint at paragraph 30.  That client subsequently died.  An act as defined by the elements can also be the failure to act.  CLEARBROOK was told of the concern of the care that their clients were receiving when they went to the hospital.  Intent or recklessness on the part of a Defendant can also be deemed to be the Defendant's acting in reckless disregard of a high probability that emotional distress will result.  Apart from that, PAULETTE complained about the care that the deceased client was receiving.  CLEARBROOK knew or should have known that if the nurses were complaining about the standard of care received by their clients at the hospital, PAULETTE was questioning the care that was being given to this particular client, the death would result in yet more anxiety.  Nonetheless, CLEARBROOK continued to do nothing.

-3-

PAULETTE believes that her Complaint "briefly describes the events" as required by Sanjuan v. American Board of Psychiatry and Neurology, 40 F.3d 247, but in such a manner as to adequately state a cause of action. The standard as described in CLEARBROOK's memorandum is that the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. Kolupa v. Roselle Park District, 438 F.3d 713 (7th Circuit. 2006). Paragraph 29 of the Complaint states that "CLEARBROOK knew that PAULA had an ongoing relationship with the clients and, regardless of fault, and was upset over the death of this client." Paragraph 30 of the Complaint refers to the Medical Professionals Meetings and points out that a few of the nurses complained that when clients went to the hospital the condition that they were in when they returned was "less than acceptable", and that "PAULA questioned the care that the client was receiving at the HOSPITAL." Paragraph 32 of the Complaint refers to "CLEARBROOK conduct has caused PAULA'S emotional distress." CLEARBROOK's conduct goes beyond the termination of PAULA. The fact remains that not only PAULETTE was questioning the care that the clients were being given at the hospital; other nurses raised similar complaints as reflected in the notes of the Medical Professional Meeting attached to the Complaint. PAULETTE was not at that particular meeting when the other nurses raised their concerns as she was being terminated on that day. Any health care provider that was concerned about their clients would be upset if a hospital was given less than adequate care to any individual, let alone an individual who was challenged. PAULETTE was stressed long before this client died as a result of the conditions at CLEARBROOK.

For the foregoing reasons, the Defendant's Motion to Dismiss Count II of Plaintiff's Complaint should be denied.

By　　/s/ Steven A. Miner

Attorney for Plaintiff

Steven A. Miner
28 Rolling Hills Drive
Barrington, Ill.　60010
847 551-3135

CERTIFICATE OF SERVICE

      Steven A. Miner, the attorney for the Plaintiff, certifies that on July 16, 2008 he caused the Plaintiff's Answer to the Motion to Strike in the above captioned matter to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, with a courtesy hard copy personally delivered to the chambers of the Honorable Judge James Holderman, and served a copy of the foregoing electronically by operation of the Court's CM/ECF system to Defendant's counsel of record, Devlin J. Schoop.

                                  By:     ___/s/ Steven A. Miner____